**STANDARD OIL CO. v. UNITED STATES et al. (INTERSTATE COMMERCE COMMISSION, Intervener).**

**No. 171.**

District Court, N. D. Indiana, Hammond Division.

March 5, 1930.

Knapp & Campbell, Harry I. Allen, John R. Cochran, L. L. Stephens, and Harry A. Daugherty, all of Chicago, Ill., for petitioner.

Elmer B. Collins, Sp. Asst. to Atty. Gen., John Lord O'Brian, Asst. to Atty. Gen., and Oliver M. Loomis, U. S. Atty., of South Bend, Ind.

J. Stanley Payne, Asst. Chief Counsel, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., of counsel), for Interstate Commerce Commission.

J. L. Aber, of Pittsburgh, Pa., D. P. Connell and J. N. Davis, both of Chicago, Ill., E. J. Halberg, of Cleveland, Ohio, Herbert S. Harr, of Cincinnati, Ohio, Walter McFarland, of Chicago, Ill., G. D. Peters, of Hammond, Ind., M. B. Pierce, of New York City, K. L. Richmond and E. A. Smith, both of Chicago, Ill., L. H. Strasser, of St. Louis, Mo., and F. H. Towner, of Chicago, Ill., for defendant carriers.

Before SPARKS, Circuit Judge, and BALTZELL and SLICK, District Judges.

SPARKS, Circuit Judge.

This suit is brought by Standard Oil Company (Indiana), petitioner, against the respondents, United States of America and fifty railway companies, who will be hereinafter referred to as the respondent carriers.

Prior to filing this suit the petitioner had filed two complaints with the Interstate Commerce Commission, hereinafter referred to as the Commission, alleging that the respondent carriers had collected from petitioner, between November 27, 1920, and November 1, 1923, freight charges on certain shipments of petroleum and petroleum products based upon rates contained in freight tariffs which were not applicable, and, therefore, were in violation of section 6 of the Interstate Commerce Act as amended (49 USCA § 6). In those complaints petitioner contended that if proper freight tariffs had been applied, lesser charges would have accrued, and that it was entitled to a refund of the difference between the charges collected under the tariffs which the respondent carriers applied, and which the petitioner claimed were not applicable, and the charges provided for under the tariffs which the petitioner claims were applicable.

Upon the complaints and answers thereto division No. 1 of the Commission held hearings, at which voluminous oral and documentary evidence was submitted on all the merits. As bearing on the question of interpretation and application of rates, the Commission heard and considered evidence on the reasonableness and practicability of routes, and the prior usage and custom of the carriers, shippers, and the Commission with relation thereto. Division No. 1 of the Commission issued its report finding that the rates collected by the respondent carriers were the legally applicable rates under the established tariffs, and accordingly entered an order dismissing the complaints in the following language: "These cases being at issue upon complaints and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and said division having, on the date hereof, made and filed a report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof: It is ordered, That the complaints in these proceedings be, and they are hereby, dismissed." Standard Oil Company (Indiana) v. Atchison, Topeka & Santa Fé Railway Company, 113 I. C. C. 597.

Afterwards petitioner filed a petition for reargument and reconsideration, which was granted, and further oral argument was heard by the Commission, ten of the eleven Commissioners sitting. Later the Commission issued its report on reargument, in which it affirmed the findings of division 1 and entered an order dismissing the complaints. Standard Oil Company (Indiana) v. Atchison, Topeka & Santa Fé Railway Company et al., 139 I. C. C. 297.

The instant suit prays that a decree be entered adjudging the orders of the Commission, heretofore referred to, to be null and void in all respects, and ordering the same to be abrogated, canceled, and set aside, and that the Commission be directed by this court to enter an order in the causes referred to granting the prayer of said complaints, and finding that petitioner has been overcharged as prayed; and that the Commission have a further hearing, if necessary, for the purpose of determining petitioner's damage.

We are first met with the objection on the part of respondents that the orders of the Commission dismissing the complaints re-

ferred to are orders denying affirmative relief sought by petitioner, and are not subject to review by the courts.

The pertinent provisions of the Commerce Court Act creating the jurisdiction which this court may exercise over orders of the Commission, are as follows:

"First. All cases for the enforcement, otherwise than by adjudication and collection of a forfeiture or penalty or by infliction of criminal punishment, of any order of the Interstate Commerce Commission other than for the payment of money.

"Second. Cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission." Act June 18, 1910, 36 Stat. 539.

The Urgent Deficiencies Act of October 22, 1913, 38 Stat. 219, abolished the commerce court and transferred its jurisdiction to courts called "District Courts," which are specially constituted, consisting of three judges, at least one of which must be a circuit judge. This court has the same jurisdiction that was vested in the commerce court, and it has no greater jurisdiction. Manufacturers' Ry. Co. v. United States, 246 U. S. 457, 38 S. Ct. 383, 62 L. Ed. 831.

It will be observed that the statute includes "any order" of the Commission, but in construing these words it was said that the statute confers no jurisdiction to annul or enjoin purely negative orders of the Commission. Procter & Gamble Co. v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091. The court's reasoning in that case is that only such orders may be enjoined under the statutes as require the doing, or abstaining from doing, acts embraced by previous affirmative command of the Commission, and that since an order dismissing a complaint makes no command, and requires no one to do anything, nor to refrain from doing anything, there is nothing in such order to which the court's injunction could attach, and that therefore such mere negative orders are not orders within the meaning of the statutes.

The petitioner, however, contends:

First. That the complaints which it originally filed with the Commission involved only the construction or interpretation of certain tariffs which were conceded to have been in effect at the time the shipments moved; that all shipments were routed by the shipper in accordance with the tariffs in effect; that the questions presented were therefore purely matters of law and did not require the exercise by the Commission of any of its administrative functions, and are therefore reviewable by this court.

Second. That this court can review an order of the Commission holding a given rate or regulation just, reasonable, or not discriminatory, if the holding is wrong as a matter of law, which it claims is true in the instant case.

Third. That the orders of dismissal were a determination of a right on the one hand and of an obligation on the other, and that this court may review such orders even though negative in form.

Fourth. That the orders of the Commission, though negative in form, are affirmative in effect, and therefore reviewable.

It may be conceded that an order of the Commission which involves solely matters of law, and which does not involve the Commission's administrative functions, may be reviewed by the courts; and though the order be negative in form yet affirmative in effect, it is still subject to review, but such review must be had in the manner provided by law. In order to have a proper conception of the issues submitted to and decided by the Commission with relation to the complaints referred to, it will be helpful to consider not only the allegations of the complaints, but also the scope of the evidence heard and the findings of the Commission upon which the order of dismissal was based. The first complaint dealt with the application at intermediate points, on continuous routes, of specific rates to more distant named points under open routing in the tariffs in connection with intermediate rules. The second complaint dealt principally with the use of a so-called combination rule in local tariffs of short line intermediate carriers in constructing combination rates on traffic specifically routed over indirect routes, when the tariffs of the originating and delivering carriers specifically provided that such rule would not apply. Each shipment was fully routed by the shipper, more than 400 different routings having been used, many of which are covered by slightly different tariff provisions. Both complaints were heard together and were disposed of in one report. The Commission did not dismiss petitioner's complaints for want of jurisdiction, but granted it a plenary hearing and decided the complaints upon the merits. Much evidence was heard and on every issue raised by the pleadings.

With relation to the first complaint, the Commission found "that the rates charged by the defendant carriers were those found in

Kelly's exceptions to the official classification; that prior to July 11, 1918, these rates were 90% of the fifth class rates, but that on that date in accordance with instructions from the Director General of Railroads the percentage basis was cancelled and the method of stating oil rates in specific amounts was adopted, and continued in effect during the shipments in question. That during the period of shipments there were in effect in individual tariffs of the Big Four Railway Company and the Illinois Terminal Company, over the territory in question, a specific commodity rate for petroleum of 21 cents prior to April 5, 1922, and 17.5 cents on and after that date, and these rates were lower than those charged to certain intermediate points on circuitous routes"—which were the destinations referred to in petitioner's shipments.

They were applicable in connection with one or the other of the two intermediate rules set forth below.

"Illinois Terminal Tariff Rule.

"To or from points where rates are not specifically named in this tariff but which are directly intermediate to or from points having specific rates, the rate to apply will be the rate as named to or from the first specified point beyond the point not having a specific rate."

"Big Four Tariff Rule.

"Except as otherwise specifically provided for herein, the rate to any point of destination not specifically provided for, the following will govern:

"1. If point of destination is located directly between two stations to which different rates are named, the rates will be the same as to the one of the two stations between which it is directly located to which higher rates are named.

"2. If point of destination is located directly between two stations to which the same rates are published, such rates will also apply to the intermediate station.

"3. If point of destination is not located between two stations to which specific rates are named, the rates to the next more distant station beyond located on the same railroad as the intermediate station, will apply."

The petitioner contended that the rate charged did not constitute such a specification as is contemplated by the provisions quoted. Respondents conceded that so long as the tariffs provided for computing these rates

on a definite percentage basis, they were class rates, but contended that when that method was canceled, and that of stating oil rates in specific amounts was adopted, they became commodity rates. Division No. 1 of the Commission adopted this theory, and the Commission on final hearing concurred in this view, as contained in the following excerpt from its written opinion: "The rates charged applied on the single group of commodities in the petroleum list; they were published in definite amounts; and prior to the raising by the complainant of the technical tariff question presented in this case, had been recognized by the carriers, the shippers, and by us, as the applicable rates. In our opinion, they were sufficiently specified under the tariff provisions above referred to as to render the intermediate rules inoperative in connection with the traffic. This being so, there is no occasion to consider further the terms of those rules or to undertake to determine the character or amounts of rates which would be produced by their application. * * * We find that the rates charged were legally applicable."

With relation to the second complaint, the Commission in its report used the following language:

"The shipments covered by this complaint moved from points west of the Mississippi River to Alton or East St. Louis, and thence to destinations in Missouri, in Illinois, and in States east of Illinois. In the majority of instances they were routed by the shippers so as to require the intervention between the trunk lines west and east of the river of one or more lines operating in the vicinity of East St. Louis and Alton, hereinafter referred to as terminal lines, although in all such instances direct interchange between the trunk lines was possible with less, and in many instances materially less, transportation than was necessitated by complainant's routing. No joint rates were published but there were in effect two-factor combinations to and from East St. Louis or Alton which were not subject to the combination rule, the terminal lines above referred to being parties to the components east of the river. The individual tariffs of the terminal lines, however, contained the combination rule, and if combination rates over the routes including the terminal lines were constructed by including therein the individual rates of those lines and treating all the components as provided by the rule the resulting through rates would have been less in each instance than the un-

treated two-factor combinations on East St. Louis or Alton. It was for the sole purpose of bringing the combination rule into play, and extending its application to all the components of the rates under the principle of Sligo Iron Store Co. v. W. M. Ry. Co., 62 I. C. C. 643 [Id.,], 73 I. C. C. 551, hereinafter referred to as the Sligo case, that complainant included one or more of the terminal lines in its specified routing.

"The combination rule was also published in connection with the rates to Chicago which complainant sought to have applied to its shipments under the intermediate rule. As such intermediate application has been found in No. 15877 to have been unauthorized, it will not be necessary to consider the application of the combination rule in connection with such rates.

"As illustrating the working of the combination rule in a specific instance the former report referred to a shipment from Tulsa, Okla., to New Palestine, Ind., routed Midland Valley, Missouri-Kansas-Texas, and Merchants Bridge Transfer to East St. Louis, Litchfield & Madison to Edwardsville, Illinois Terminal, St. Louis, Troy & Eastern, and Terminal Railroad Association back to East St. Louis, Big Four thence to Indianapolis, Ind., and C., I. & W. to destination. Applying the combination rule as contended for by the shipper would produce the following result:

|  | Cents |
|---|---|
| Tulsa to East St. Louis........ | 30.5 less 6 cents—24.5 |
| East St. Louis to Edwardsville | 5.5 less 6 cents— 0 |
| Edwardsville to East St. Louis | 4.0 less 6 cents— 0 |
| East St. Louis to Indianapolis | 17.5 less 6 cents—11.5 |
| Indianapolis to New Palestine | 9.0 less 6 cents— 3 |
| Plus ......................... | 6 |
| Through rate................. | 45. |

"The two-factor combination, untreated by the combination rule, contended for by defendants was:

| Tulsa to East St. Louis.................... | 30.5 |
|---|---|
| East St. Louis to New Palestine................. | 25. |
| Through rate ............................ | 55.5 |

"The combination rule was published only in connection with the 5.5-cent factor from East St. Louis to Edwardsville over the Litchfield & Madison. It will be noted that the difference between the two through rates shown is almost double the factor of that road. This instance, involving the use of a five-factor combination, illustrates the principle underlying complainant's contention with respect to all of these shipments, although on a large majority of them the application of the combination rule is sought to only three-factor or four-factor combinations.

"In the former report it was pointed out that in the Sligo Case the carrier publishing the combination rule was considered as holding itself out individually to protect the through rate resulting from the application of the rule, and that the application of that principle here would require the terminal lines to absorb a greater amount than they received for the transportation which they performed. This the division declined to permit. In this connection complainant now points out that some of the trunk lines which participated in the transportation east of the river were parties to the tariffs of certain of the terminal lines, and, therefore, that they properly should stand a share of the deduction resulting from the application of the combination rule. This position is not well taken. While trunk lines did participate in certain joint rates published in the short lines' tariffs, it is not proposed to apply the combination rule in connection with such rates, but in connection only with the rates applicable to that portion of the transportation performed by the terminal lines. Under these circumstances there can be no contribution by the trunk lines to deductions which would result from the application of the rule to such rates.

"In the former report it was found, by reason of the excess of the amount of the absorption by the short lines over the amount they received for the transportation, which would have resulted from the application of the combination rule under the principle of the Sligo Case as there construed, that such application would have produced a result which was unlawful per se, and that the combination rule would therefore be regarded as of no effect. Upon further consideration we are of opinion that these findings must be modified and that the combination rule must be here applied under the principle of the Sligo Case as hereinafter construed. It does not follow, however, that complainant will obtain the benefit of the rates for which it contends.

"As stated in the report on reargument in the Sligo Case, the publication of the combination rule is a holding out of a manner of making combination rates which the publishing carrier must protect, or, in other words, the local rate of the publishing carrier when used as a factor of a combination rate is

modified by the rule to the extent necessary to protect a through rate constructed as provided by the rule. We have repeatedly held that such a holding out as is constituted by the combination rule and similar undesirable forms of tariff publication do not affect the factors of other carriers not made subject to the rule, which carriers should earn their separately established factors without deviation. We have never had occasion, however, to consider specifically the question whether, in order to protect the rate which would result from the application of the combination rule, the carrier publishing it may be required to absorb a greater amount than it received for the transportation service which it performed in connection with the particular shipment. That is the situation which is here presented, the component of the terminal line being less than the difference between the rate charged and that which would be produced by application of the rule as contended for by complainant.

"Upon consideration of this specific question we are of opinion that the publication of the combination rule may not properly be construed as a holding out by the publishing carrier to absorb a greater amount than the revenue it receives from the transportation, in order to protect the through rate constructed as provided by the rule. In other words, it is our view that the holding out involved in the combination rule goes no further than the rate of the publishing line itself, and the shrinkage resulting therefrom in no case may be greater than the rate or rates of the publishing line or lines which are made subject to the rule. If such a shrinkage would not reduce the combination rate in connection with which the rule is sought to be applied to as low a figure as some other available combination the latter would, of course, be applicable.

"From an examination of the information now before us it appears that the above finding would not result in a lower charge on any shipment here considered than that produced by the rates assessed, and we find that the latter were the legally applicable rates."

We have set forth the above excerpts from the Commission's reports as illustrative of the issues presented by the two original complaints, the evidence that was heard, and the investigation that was made by the Commission, in order to reveal what function of the Commission was exercised in the dismissal of the complaints, whether administrative or otherwise.

While questions of tariff interpretation may in some instances involve purely a question of law, in many instances such interpretation involves preliminary determination of facts which must be made before a court can assume jurisdiction, and in such instances resort must first be had to the Commission. Great Northern Railway Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943.

The complaints filed with the Commission sought reparation upon petitioner's contention that the intermediate rule and the combination rule applied to the shipments in question. Thus the Commission was called upon to determine whether the rates made and claimed by petitioner under those rules were applicable, or whether some other rate was applicable to the shipments described. Evidence was given to the effect that the intermediate rule is one merely for convenience of carriers in publishing their tariffs. It was established by the Commission itself in the exercise of administrative authority conferred upon it by section 6 of the Interstate Commerce Act as amended (USCA, tit. 49, § 6, par. 3).

Pursuant to that provision, the Commission has prescribed and promulgated certain rules to govern the construction and filing of freight tariffs. One of these is the intermediate rule; and it is clear to us that where the rule is promulgated by the Commission in the exercise of its purely administrative powers, questions concerning the application of that rule are administrative questions, and in determining them exercise of administrative judgment is necessary. Whether the Commission, the shippers, and the respondent carriers had, by uninterrupted usage and custom, adopted a construction and application of the intermediate rule utterly inconsistent with respondent carriers' present contention, was a question of fact to be determined by the Commission, and in that determination it was exercising an administrative function and not one purely judicial.

It is also obvious that whether a particular route—for example, the wholly unnecessary side haul from East St. Louis to Edwardsville and return—is reasonable or practicable, is a question peculiarly within the knowledge of the Commission to determine, in the light of its constant contact with such questions and the special or expert knowledge possessed by it concerning such matters. Therefore, whether the devious and eccentric

route over the Litchfield and Madison, and Illinois Terminal specified and required by petitioner in order to obtain application of the combination rule is reasonable or practicable, apparently is a question necessitating the exercise of administrative judgment by the Commission.

In our judgment, therefore, there is no basis for the allegation that the case presented no question necessitating the exercise of the Commission's administrative functions. On the contrary, we think it was a case in which preliminary resort to the Commission was required. This having been sought by petitioner and having received a negative finding, it falls within the rule laid down in the case of Procter & Gamble Co. v. United States, supra, and it is not subject to review by this court.

But, even conceding for the purpose of argument that the case involved no question requiring the exercise of administrative judgment by the Commission, the motion to dismiss must be sustained, because, as stated above upon authorities cited, there is nothing in the order of dismissal to which an injunction can attach. The jurisdiction conferred by the statute upon this court is restricted, and limits the power of this court to (1) enforcement of an order of the Commission, and (2) "enjoin, set aside, annul, or suspend" such order. Therefore the court is without power to grant the relief prayed by the petition, namely, the issuance of an order requiring the Commission to enter upon a further hearing, or to enter a further order in accordance with such decision as this court may render concerning the interpretation of the tariffs.

If, as petitioner now contends, the sole question presented to the Commission for determination was one of law, then petitioner had, under the provisions of section 9 of the Interstate Commerce Act (24 Stat. 379, U. S. Code, title 49, § 9 [49 USCA § 9]), the right and privilege originally either to make complaint to the Commission or to bring suit in a District or Circuit Court of the United States of competent jurisdiction for the recovery of the damages it claims to have sustained, but had not the right to pursue both of said remedies; and, having elected to make complaint to the Commission and having obtained the Commission's decision, petitioner has exhausted its rights and may not now in the courts pursue the alternative remedy.

The relief prayed for in the petition is denied, and the petition is dismissed.