**ATCHISON, T. & S. F. RY. CO. v.
UNITED STATES.**
No. 49759.

United States Court of Claims.
Jan. 9, 1952.

Lawrence Cake, of Washington, D. C., for plaintiff.

S. R. Gamer and Marvin C. Taylor, Washington, D. C., Louis R. Mehlinger, Washington, D. C., on the brief, Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This case is the latest in a series of cases involving the railroad rate classification of the jeep.

The question involved is primarily the classification of the jeep within the meaning of the consolidated freight classification schedules. The stipulated issue in the original jeep case was whether the jeep was primarily a passenger or freight motor vehicle within the meaning of those schedules. That issue was thoroughly briefed and argued during the original case.[1] In that case there were six volumes of oral testimony totaling 745 pages. The hearing consumed eight entire days between December 13, 1948, and August 22, 1949, in three different cities. A total of 60 exhibits, covering hundreds of pages, including one bound volume, was introduced. The court held, after very detailed presentation and after careful consideration, that the jeep was a passenger vehicle, and judgment was entered for the plaintiff.

Exactly the same basic issue was presented in the second jeep case, Union Pacific Railroad Co. v. United States, D.C., 101 F.Supp. 78, as was presented in the first. There the defendant filed the same answer that is filed in the present case. Defendant there sought and was permitted to argue the main issue all over again. It requested the court, instead of placing

1. Union Pacific Railroad Co. v. United States, 117 C.Cls. 534.

the jeep in the freight or passenger motor vehicle classification, to consider placing it under a subheading of the motor vehicles classification, No. 43810, which reads as follows: "Dumping or hauling, with lug wheels, tractor lug tires, or crawler type."

From the briefing and oral argument, however, it was apparent that this request 'was simply an endeavor to have the original issues reconsidered. In that connection defense counsel called·attention to a decision by the Interstate Commerce Commission in Grafton Coal Company v. Baltimore & Ohio R. R. Co., No. 29928, from which we quote in part:

"By complaint filed February 18, 1948, the complainant corporation alleges that the third-class rate [2] charged on five carloads of motor vehicles shipped knocked down, packed in boxes, from Columbus, Ohio, to Lumberport, W. Va., in March and June 1946, was unjust, unreasonable, and inapplicable. We are asked to award reparation.

"Early in 1946 the complainant purchased from the War Assets Administration certain surplus property described as 'Trucks, 10-ton, 6 x 4/GSLC/chassis only/boxed/Item 692.' The vehicles, without bodies, were about 16 feet long and weighed approximately 18,000 pounds each. Each vehicle had six wheels, four being geared or driving wheels, and all were equipped with 1200x24 tractor lug grip tires. They were knocked down to the extent that the wheels, cabs, and fenders had been removed, and each vehicle was packed in a heavy reinforced wooden case lined with waterproof material. The weight of each vehicle as packed for shipment was 21,915 pounds, and two boxes were loaded on each of five open-top cars 41 feet or less in length. Four of the cars moved over lines of The New York Central Railroad Company to Grosvenor, Ohio, and The Baltimore and Ohio Railroad Company beyond. The fifth car moved over the Baltimore & Ohio direct. After receipt by the complainant, dump bodies were constructed and mounted on the chassis, mak-ing the vehicles dumping trucks, each capable of hauling approximately 20 tons of coal. Freight charges originally paid and borne by the complainant at a rate of 71 cents were later adjusted to those accruing at a third-class rate (70 percent of first class) of 58 cents. The complainant contends that the applicable rate was the class 40 rate [3] of 33 cents. The reasonableness of the class rates, as such, is not attacked.

"At the time these shipments moved, item 43775 of the classification provided a carload rating of third class, minimum 15,000 pounds, subject to rule 34, on automobile chassis, knocked down, loose or in packages, under the heading "Vehicles, Motor." Under the same heading, item 43810 of the classification provided a rating of class 40 in official territory, minimum 24,000 pounds, subject to rule 34, on dumping or hauling (vehicles), with lug wheels, tractor lug tires, or crawler type, set up, loose or in packages. Rule 34 is the so-called graduated minimum-weight rule.

\* \* \* \* \* \*

"After the complainant's vehicles were assembled at destination and the dump bodies were added, each weighed about 27,000 pounds and the over-all length was 28 feet."

It will be noted that the Grafton decision referred only to War Assets Administration surplus property consisting of knocked down heavy six-wheeled vehicles 16 feet long, without bodies. No logical basis was apparent in the second jeep case, nor is any apparent now, for classifying the jeep, diminutive by comparison, with vehicles of those proportions. We granted plaintiff's motion for summary judgment.

And now once more in the instant case the exact same question is presented as was involved in the second case decided November 6, 1951. The defendant is the same, and only the identity of the railroad differs. The same answer has been filed as was filed in the second jeep case, and we have permitted another argument on the same basic issue.

2. Rates will be stated herein in amounts per 100 pounds.

3. The word "class" followed by a number indicates a corresponding percentage of first class.

In arguing the motion in the instant case the defendant called attention to two more decisions by the Commission, August Plantz, Inc., v. Atlantic & East Carolina Railway, 278 I.C.C. 109, and Harrison Construction Company v. Pennsylvania Ry. Co., 280 I.C.C. 279. The Plantz case involved War Assets Administration surplus property, which consisted of used motor vehicles and parts thereof, and is described as one tank truck and two dump bodies, several truck tractors, truck tractors to tow semi-trailers and two 12-ton tractors used to recover damaged tanks and materials. The Harrison case involved 40 surplus motor vehicles, without bodies, of two types, one a tractor truck with six wheels and 148-inch wheel base, the other type being cargo truck chassis with six driving wheels and a 162-inch wheel base. They had been boxed as for overseas shipment.

We are convinced after reading the entire decisions in these cases that there is no substantial ground for reclassifying the jeep on the basis suggested by defendant, and we feel that no material issue has been raised.

In the original jeep case the briefs included a thorough discussion of the nature of the shipment of passenger and freight motor vehicles. And we held the jeep was primarily a passenger vehicle. No question of any passenger vehicle was involved in the decisions of the Interstate Commerce Commission, and there is manifestly no kinship between the jeep and the machinery involved in those cases.

■ And so for the purpose of this case also we hold that the jeep is a passenger vehicle, and plaintiff's motion for summary judgment must be granted.

■■ We quote from our decision in the second jeep case, Union Pacific Railroad Co. v. United States, D.C., 101 F.Supp. 78, 79, supra:

"The defendant adds that it desires 'to present and develop in a manner not done at the former trial the basic principles which underlie the whole matter of classification and rate making.' We have neither the facilities nor the experience to go into the complicated field of rate making.

Besides, that is a function placed by Congress in the hands of the Interstate Commerce Commission.

"We have no means of finding whether a rate established by the Commission is too high or too low. In fact, we are not authorized to pass on that question. We have no rate-making functions.

"If the rate is too high the defendant may make a showing of that fact to the Interstate Commerce Commission and may ask for a different classification.

"We quote from the opinion in Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 377, 63 L.Ed. 772: 'If plaintiff had sought relief against a rate or practice alleged to be unjust because unreasonably high or discriminatory, the remedy must have been sought primarily by proceedings before the commission [citing cases]; and the finding thereon would have been conclusive, unless there was lack of substantial evidence, some irregularity in the proceedings, or some error in the application of rules of law [citing cases].'

"The construction and application of the published rates and classifications are proper matters for the courts as well as the Commission, but any changes in the published rates and classifications are a matter for the Commission. Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S.Ct. 477, 66 L.Ed. 943.

"As was stated by the Comptroller General in a letter to a Congressional subcommittee under date of June 7, 1948: 'It is well settled that the function of determining the reasonableness of duly filed and published rates is one that Congress has committed initially to the Interstate Commerce Commission. See, generally, 49 United States Code 15.'"

The same basic issue has been argued, briefed and presented three different times. No new issue is involved.

It may be that an entirely new classification should be made for the jeep. That is not in our field. It is peculiarly the function of the Interstate Commerce Commission.

Application for a special classification could have been made to the Commission

892

when the issue was first raised. That gate is still open as to future shipments.

When asked why the matter had not been taken to the Commission, defendant's counsel frankly admitted that he did not know and that that was one of the first questions he had asked. Just as frankly we do not know either.

 Our decisions in the previous jeep cases do not, of course, make the present controversy a *res adjudicata*. But, because the material facts are the same, and no new issue of fact or law which seems to us to be substantial has been tendered, we think the motion should be granted. To send this case to trial would seem to us to be a sheer waste of the time and resources of the court and the litigants. The Government has had, and has used, its opportunity to attempt to persuade us that our previous decisions were wrong. It has, therefore, had its day in court for the only purpose which might have been fruitful to it, if its efforts had been successful.

Plaintiff's motion for summary judgment is granted, and defendant's counterclaim dismissed. Entry of judgment is suspended awaiting a report from the General Accounting Office showing the amount due plaintiff in accordance with this opinion.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.