**INTERSTATE COMMERCE COMMISSION**

v.

**LAW MOTOR FREIGHT, INC.**

**Civ. A. No. 3128.**

United States District Court, D. New Hampshire.

Oct. 27, 1970.

J. F. Walker, Interstate Commerce Commission, Boston, Mass., for plaintiff.

Paul S. Cleaveland, Nashua, N. H., and Matthias J. Reynolds, Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., for defendant.

BOWNES, District Judge.

This is an action brought by the Interstate Commerce Commission pursuant to Title 49, United States Code § 322(b) (1),[1] and under the laws and rules relating to suits in equity arising under the Constitution and laws of the United States. The defendant, Law Motor Freight, Inc., is a corporation organized under the laws of New Hampshire with its principal place of business at Nashua, New Hampshire.

There is no dispute as to the facts. The issue arises from the divergent views of the legal conclusions to be drawn from the facts. The question of law posed to the Court is:

Whether the embargo of the defendant against all interline and freight forwarder less-than-truckload traffic originating or terminating at all points which the defendant is authorized to serve in Massachusetts, New Hampshire, or Rhode Island under its certificates of public convenience and necessity, and the continuance of the defendant, despite that embargo to provide less-than-truckload freight service to certain volume ship-

---

1. 49 U.S.C. § 322(b) (1) provides in part as follows:

*Jurisdiction of district courts to restrain violations and enforce orders*

 (b) (1) If any motor carrier or broker operates in violation of any provision of this chapter (except as to the reasonableness of rates, fares, or charges and the discriminatory character thereof), or any lawful rule, regulation, requirement, or order promulgated by the Commission, or of any term or condition of any certificate or permit, the Commission or duly authorized agent may apply for the enforcement thereof to the district court of the United States for any district where such motor carrier or broker operates.

**508**

pers constitutes, without more, a violation of the provisions of the defendant's certificates of convenience and necessity requiring that it render reasonable and adequate service to the public.

 After a preliminary hearing, I determined that that issue was not one essentially of fact and discretion in technical matters requiring the expertise of the Commission. Great Northern Railway Co., et al. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 66 L.Ed. 943 (1922), and that it did not involve the uniformity of resolution required by the regulatory scheme. Locust Cartage Co., Inc. v. Transamerican Freight Lines, Inc., 430 F.2d 334 (1st Cir. 1970). The evidence was, therefore, limited to the following four issues:

1. The defendant's operating rights as set forth in its certificates of convenience and necessity.

2. The reasons for the Embargo Notice.

3. The provisions of the Embargo Notice.

4. Whether or not the defendant had provided less-than-truckload freight service to certain shippers.

 I did not allow the defendant to introduce evidence that no shipper had been subjected to any unjust or unreasonable charge, unjust discrimination, or undue or unreasonable prejudice or disadvantage as a result of the embargo. Nor did I allow the defendant to introduce evidence as to the nature and scope of the defendant's carrier service prior to and since the embargo, or the effects of lifting the embargo on the defendant or any of its shippers. Neither did I allow any evidence as to whether or not the defendant was, in fact, providing "reasonably continuous and adequate service to the public." I ruled that the determination of such facts would require the expertise of the Commission and the application of the doctrine of primary jurisdiction. Order of September 8, 1970.

Law Motor Freight, Inc., was authorized by the Interstate Commerce Com-

mission to engage in transportation in interstate commerce as a common carrier under docket numbers MC–36144 and MC–36144 Sub. 8. Ex. 1. Pursuant to such authorization, the defendant has engaged, and now engages, in the trucking of general and specific commodities over regular and irregular routes as a common carrier between points in New Hampshire, Massachusetts, Connecticut, Rhode Island, and New York.

On December 7, 1966, the defendant issued an Embargo Notice as follows:

Effective 12:01 a. m., December 8, 1966, embargo all interline and freight forwarder less-than-truckload traffic originating or terminating at all points in Massachusetts, New Hampshire and Rhode Island served by Law Motor Freight, Inc., due to congestion arising from terminal relocations at Boston, Mass. and Keene, New Hampshire. Ex. 1, last page.

At the time that the embargo issued, there were terminal relocations causing congestion as specified. It is clear, however, that the embargo has remained in effect not because of the original congestion, but because it is to the defendant's economic advantage and profit to keep it in effect. The defendant discovered, after the embargo went into effect, that the embargoed traffic was unprofitable and that the defendant's profits increased. The total of shipments handled by the defendant decreased approximately fifty per cent after the embargo went into effect but, at the same time, the average revenue yielded per shipment reflected a substantial increase in dollar value. In short, the defendant found, as might be anticipated, that by handling only truckload traffic, its efficiency was increased, its operating costs decreased, and its profits substantially increased. This information was based on revenue studies made starting in October of 1967. The defendant claims that these studies showed that if it were not for the embargo, it probably would have been forced into bankruptcy.

However, the defendant's embargo, despite the notice, has not been total because it has continued to provide transportation for less-than-carload lots to two shippers, namely, Simplex Time Company and Uniroyal Tire Company. The reasons for continuing to serve these two customers is not entirely clear, but it would seem to be a combination of long friendship and the fact that no other trucker would serve them.

The embargo was originally instituted as a temporary emergency proceeding due to relocation and congestion at terminals pursuant to 49 C.F.R. § 1059.1 (a).[2] Such an embargo may be initiated by a carrier temporarily in situations where the carrier, for reasons beyond its control, finds it physically impossible to transport the traffic otherwise required to be handled by its grant of authority. The provisions of 49 C.F.R. § 1059.1(a) and 1059.1(c)[3] strongly imply that the embargo must be lifted once the reason for the temporary suspension of services ceases. 49 U.S.C. § 316(b) imposes upon common carriers by motor vehicles the clear and unmistakable duty to provide adequate service, equipment, and facilities for the transportation of property in interstate commerce.[4]

The question is whether the continuation of this embargo, except as to Simplex and Uniroyal, is a failure to render reasonable and adequate service to the public. Neither Court nor counsel have been able to find any cases directly on point; which is, undoubtedly, the reason for this case. There was no evidence introduced by the I.C.C. that the preference was unjust or unreasonable. The evidence was that no shipper had complained to the I.C.C. about lack of service or curtailment of service. It is evident, nevertheless, that since the embargo the defendant has not rendered the scope of service to the public that it did prior to the embargo.

## FINDINGS AND RULINGS

■ 1. The continuation of the defendant's embargo is a violation of the express terms of the certificates of public convenience and necessity issued to the defendant by the Interstate Commerce Commission since the defendant is not providing continuous and adequate transportation service to all of the public within reasonable limits of its capacity and in accord with its established rates.

■ 2. The defendant's handling of embargo traffic for Simplex Time Company and Uniroyal Tire Company, despite its Notice of Embargo against such

---

2. § *1059.1 Carriers to give public notice of embargoes.*

(a) Whenever any motor common carrier of property subject to the Interstate Commerce Act finds that because of a lack of facilities or personnel, or because it is required to give preference and precedence to other traffic legally entitled to such priority, or because of other compelling circumstances not within the control of the carrier, it is or will be unable to perform all authorized transportation services requested of it, and that it will be necessary for it temporarily to suspend the offering of service in the transportation of any commodity, commodities, or class of traffic, to or from any territory, point, shipper, consignee, or connecting carrier, or over any route, it shall immediately give public notice of such fact by a written notice of an embargo, specifying the extent thereof, the date the embargo is to become effective, its duration, if known, and the reasons why the placing of the embargo is necessary.

3. § *1059.1(c)*

Except in instances when the notice of an embargo specifies the date of its expiration, a notice of the termination or modification of an embargo shall be issued, posted, and filed by the carrier, and notice of such termination shall be given to interested shippers, consignees, and connecting lines, in the same manner as prescribed for notice of the establishment of an embargo in paragraph (b) of this section.

4. *49 U.S.C. § 316(b)*

It shall be the duty of every common carrier of property by motor vehicle to provide safe and adequate service, equipment, and facilities for the transportation of property in interstate or foreign commerce. * * *

traffic, is an undue or unreasonable preference even though no other shipper had filed a formal complaint with the Commission.

■ 3. The defendant's reason, *i. e.,* economic gain, for the continuation of the embargo is within the control of the carrier and, therefore, a violation of 49 C.F.R. § 1059.1(a).

## ORDER OF JUDGMENT

The following orders shall become effective as follows:

A. If the defendant should decide to appeal, the orders will not become effective prior to final judgment; or

B. If the defendant decides not to appeal, the orders will become effective one hundred and twenty days from date.

1. The defendant is hereby ordered and required to cancel its "Notice of Embargo No. 2" in accord with the rules and regulations prescribed by the Interstate Commerce Commission.

2. The defendant, its agents, employees and representatives are permanently enjoined and required to render reasonably continuous and adequate service to the public in pursuance of the authority granted the defendant by the Interstate Commerce Commission, unless and until such time, if at all, as there is in force with respect to said defendant authority from the I.C.C. authorizing and permitting said defendant to discontinue such operations.

3. The defendant, its agents, employees and representatives are perpetually enjoined and required to discontinue giving or causing any undue or unreasonable preference or advantage between shippers of a like or similar nature as considered in this action.

No costs to either party.

So ordered.