CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent, vs. RICKETSON MINERAL COLOR WORKS, Appellant.

*March 6—April 2, 1935.*

*Patrick J. McCaffrey* of Milwaukee, for the appellant.

For the respondent there was a brief by *Bender, Trump & McIntyre* of Milwaukee, and oral argument by *Rodger M. Trump.*

WICKHEM, J.   This controversy principally involves the effect of a ruling of the interstate commerce commission in the case of *Tamms Silica Co. v. C. E. & I. R. Co.* No. 24279, and claimed to involve a commodity identical with that involved in this case.   In the *Tamms Case* the commission ruled that the commodity involved was described by the term "ochre" and carried the rate prescribed for that substance. Defendant contends that there is nothing in the record to establish a similarity between the commodities involved in this case and those involved in the *Tamms Case,* and that the court erred in admitting in evidence a pamphlet purporting to be the report of the interstate commerce commission in this case.   It will not be necessary to review the evidence in detail.   It suffices to state that it is our conclusion that the undisputed evidence is to the effect that all of the products shipped from Cartersville and remotely resembling clay were

identical; that prior to 1926 all this material was shipped as ochre; that some time during that year a commodity rate on clay was put into effect to cover shipments of clay from Langley, South Carolina; that from that time the material in the Cartersville region was shipped as clay; that ochre is an impure ferruginous clay used as a pigment in making paint ochres, in other words, a clay with an admixture of iron oxides, giving it a color varying from yellow to red, according to the character of the iron peroxide. Not only is the evidence undisputed that the product involved in the *Tamms Case* is identical with that involved here, but there was no issue of any consequence in this matter; it being apparent from the correspondence preceding this lawsuit that the parties, and particularly the defendant, assumed that the ruling in the *Tamms Case* would establish the nature of the commodity in this case.

So far as the law is concerned there is no serious dispute. The interstate commerce commission has decided that the word "ochre," as used in the tariffs, describes this commodity. Under all the authorities the determination of this question was for the commission. It is true, as claimed by the plaintiff, that, if the commission had established a tariff for flour and one for apples, and the sole question was whether a shipment was flour or apples, the determination of this question of fact would be for the court. *Macon, D. & S. R. Co. v. General Reduction Co.* (C. C. A.) 44 Fed. (2d) 499. It is also true that, if the problem were one of construing the tariff for the purpose of determining the meanings of words used in their ordinary sense, that question would likewise be for the court. *Great Northern R. Co. v. Merchants' Elev. Co.* 259 U. S. 285, 42 Sup. Ct. 477. But if the tariff contains words used in a peculiar or special sense, and extrinsic evidence is necessary to determine this sense, or if the "manner in which the terms are used is itself a question of fact," the determination of the commission is binding. *Great Northern R. Co. v. Ry-Krisp Co.* (C. C. A.) 4 Fed. Supp. 358, 362.

It is suggested by the defendant that this case is not in point. There the defendant had paid the charges fixed by the tariff for the carriage of "cooked cereal food preparations," and it was claimed that it should have paid for the carriage of "bakery goods." The Ry-Krisp Company, prior to the lawsuit, had filed a formal complaint with the interstate commerce commission, and the commission had ruled against the shipper and found that the goods shipped should be classified as "bakery goods." The court held that the ruling of the commission was binding upon the court. Defendant claims that the case is distinguishable because there the commission had ruled upon the character of the very goods involved in the suit, while here it has not. The contention impliedly concedes everything that is necessary to sustain plaintiff's position. In the *Ry-Krisp Case* it was held, in accordance with all the previous authorities, that the binding character of the commission's determination depends upon the nature of the controversy involved in the suit. The court repeats that, if the construction of the classification description provided by the tariff is a mere matter of law, then it is for the court to determine, but if the tariff contains certain words used in a peculiar or special meaning, and extrinsic evidence to determine this meaning is necessary, or if the manner in which the terms are used is itself a question of fact, a preliminary determination by the commission will be necessary before the court may assume jurisdiction. The latter is the situation here. Assuming the identity of the commodities involved in the *Tamms Case* and in this case to be established, the commission has determined that the technical and somewhat ambiguous term "ochre," as used in the tariffs, describes the commodity here involved. That ruling is binding upon the courts. To hold otherwise would throw the administration of railroad rates into a condition of chaos, and produce the very lack of uniformity that the Interstate Commerce Act was designed to terminate. If the commodity produced in

Cartersville is to be classified as clay or ochre, according to the view of the different courts in which suits for undercharges may be brought, it is perfectly apparent that there will be a lack of uniformity in the rate charged for the same commodity unless uniformity results accidentally. This is especially true of the commodity involved here, although that fact is probably immaterial. Ochre is in one sense simply an impure clay containing iron oxide in varying percentages, and there was before the commission, and there is in this case, conflicting expert evidence as to its proper classification. The evidence is obviously directed to establishing the special or peculiar meaning of the words "clay" and "ochre," and the character of the evidence makes it probable that courts would not arrive at a unanimous answer to the question presented. This is the very situation in which the ruling of the interstate commerce commission is, and should be, determinative in the interests of uniformity of rates.

*By the Court.*—Judgment affirmed.