**HYGRADE FOOD PRODUCTS CORPO-
RATION, Plaintiff,**

v.

**The NEW YORK CENTRAL RAILROAD
COMPANY et al., Defendants.**

No. 63 C 1818.

United States District Court
N. D. Illinois, E. D.

April 18, 1967.

Richard J. Murphy, Chicago, Ill., J. Edgar McDonald, New York City, and Albert B. Russ, Jr., Jacksonville, Fla., for railroad cross-plaintiffs and defendants.

Raymond M. Zimmet, Washington, D. C., Edward J. Hanrahan, Chicago, Ill. (Russell Chapin, Colin A. Smith and Robert W. Ginnane, Washington, D. C., on the brief), for Interstate Commerce Commission and United States, cross-defendants.

Harold E. Spencer, Chicago, Ill. (Daniel J. Sweeney, Chicago, Ill., on the brief), for Hygrade Food Products Corp., plaintiff and cross-defendant.

## OPINION AND ORDER

AUSTIN, District Judge.

This is a civil action by the plaintiff, Hygrade Food Products Corporation (Hygrade), under Section 16(2) of the Interstate Commerce Act (the Act), 49 U.S.C. § 16(2), to enforce a reparation order of the Interstate Commerce Commission (the Commission). Based upon a decision by the Commission in Hygrade Food Products Corporation v. Atlantic Coast Line R., 318 I.C.C. 501 (1962), the order was entered on May 27, 1963.

This action also involves a cross-complaint authorized by 28 U.S.C. § 1336, 49 U.S.C. § 17(9), and Interstate Commerce Commission v. Atlantic Coast Line R. Co., 383 U.S. 576, 86 S.Ct. 1000, 16 L.Ed. 2d 109 (1966), filed by the defendants against the United States and the Interstate Commerce Commission to set aside the order of the Commission awarding reparation to Hygrade. Hygrade intervened as a party defendant to the cross-complaint.

Each of the six defendants is a common carrier by railroad engaged in the transportation of canned meats and other properties from Indianapolis, Indiana, to various points in the southeast, and as such, each common carrier is subject to the provisions of the Act. Hygrade is a New York corporation with its principal place of business at Detroit, Michigan. It is engaged, among other things, in the business of producing and marketing canned meats, fresh meats, and packinghouse products. By complaint filed with the Commission on August 21, 1961, Hygrade alleged that the rates charged by the defendants on 14

carloads of canned meat from Indianapolis, Indiana, to Morehead City, North Carolina; Charleston and Columbia, South Carolina; Albany and Thomasville, Georgia; and Jacksonville and Hialeah, Florida, which moved on and between May 9 and November 16, 1956, were inapplicable, unjust, and unreasonable in violation of the Act.

The proceeding before the Commission, known as Docket No. 33857, Hygrade Food Products Corporation v. Atlantic Coast Line Railroad Company, et al., was tried on modified procedure whereby a written evidentiary hearing, as supplemented by an oral hearing for the purpose of cross examination, was held. The Commission found that the rates charged on the involved shipments were inapplicable, that Hygrade was entitled to reparation in the amount of the difference between the charges collected and those which would have accrued at the rates found applicable, together with interest. Hygrade Food Products Corp. v. Atlantic Coast Line R. R., supra. The defendants having failed to comply with the order, Hygrade filed the present action.

Upon the trial in this Court the plaintiff introduced in evidence certified copies of the Commission's report and order, and the defendants filed with the Court a certified copy of the entire record before the Commission. It was agreed that if the Court upholds the validity of the order, the defendants would offer no defense to Hygrade's complaint. No oral testimony was offered by any party.

The issue in this case is what rates were properly applicable to the shipments in question under the defendants' tariffs lawfully published and on file with the Commission pursuant to Section 6(7) of the Act, 49 U.S.C. § 6(7). The facts are set forth in the Commission's findings and order which, under Section 16(2) of the Act, 49 U.S.C. § 16(2), are made *prima facie* evidence of the facts therein stated. There being no dispute over the facts, the Court adopts the Commission's findings as properly stating the facts, which will be repeated here only to the extent necessary for a proper understanding of the issues.

Each of the shipments in question moved from Indianapolis over the New York Central Railroad to Cincinnati, Ohio, thence via the other defendants to the various destinations. There were no point-to-point commodity rates on canned meats published from Indianapolis to the destinations, and Hygrade paid and bore charges based on class 22 exceptions rates, which were published in Central Territory Railroads Tariff Bureau tariff I. C. C. No. 3636 (the class rates tariff). This tariff was published jointly by tariff publishing agents for the Central Territory and the Southern Territory.

There were, however, lower commodity column 20–Y rates from Evansville, Indiana, to the same destinations in Southern Freight Association Tariff Bureau tariff I. C. C. No. 513 (the commodity tariff). This tariff was published only by the tariff publishing agent for the Southern Territory. Evansville, but not Indianapolis, was named as a point of origin in the commodity tariff. Indianapolis is alleged by Hygrade to be an intermediate point in constructing a route from Evansville to each southeastern destination involved. The commodity rates are subject to an item 20 series which contains a holdout type intermediate rule, the effect of which is to provide rates from intermediate points on authorized routes when a rate is not specifically published in the tariff from such intermediate point.

By applying the intermediate rule, the Commission found that the rates in the commodity tariff, applicable from Evansville to the involved destinations on shipments such as these, were applicable over authorized routes of the New York Central Railroad from Evansville via Indianapolis to Cincinnati, thence to the destinations via the lines of the other defendants. It is this determination of the Commission that is challenged here.

## I. *The Scope of Judicial Review.*

The scope of judicial review is determined by whether the issue pre-

sented for review was within the primary jurisdiction of the Commission. I. C. C. v. Atlantic Coast Line R. Co., 383 U.S. 576, 579–580, 594, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966). Here the Commission determined that the commodity rates found in the Southern Freight Association tariff from Evansville, Indiana, to the destinations applied to the shipments in question. The propriety of this determination is the sole question presented for review. In reaching this determination, the Commission merely construed the provisions of the Southern Freight Association tariff. This question does not raise "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by" the Interstate Commerce Act, see United States v. Western Pacific R. Co., 352 U.S. 59 at 65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); nor is "the inquiry * * * essentially one of fact and of discretion in *technical* matters, * * * *", see Great Northern R. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922) (emphasis supplied). The principal issue involved here, whether the determination by the Commission to apply the commodity tariff to these shipments by virtue of the intermediate rule found in the tariff was an unlawful construction of that tariff, is not beyond the understanding of the Court unassisted by expert guidance. Its resolution does not depend upon evaluation of "voluminous and conflicting evidence" that can only be accomplished by expert knowledge of the transportation industry. See Great Northern R. Co. v. Merchants Elevator Co., supra, 259 U.S. at 291, 42 S.Ct. 477, 66 L.Ed. 943; National Van Lines, Inc. v. United States, 355 F.2d 326 (7th Cir. 1966). Thus, the determination of the Commission is solely a question of tariff construction, and hence one of law. Great Northern R. Co. v. Merchants Elevator Co., supra; United States v. Western Pacific R. Co., supra; Armour & Co. v. Chicago, M., St. P. & Pac. R. Co., 188 F.2d 603, 608 (7th Cir. 1951); I. C. C. v. Atlantic Coast Line R. Co., supra; National Van Lines, Inc. v. United States, supra.

The tariffs here involved do not admit of facile comprehension and construction. Indeed, the degree of effort required to understand the tariffs and their proper application in light of the applicable legal principles of tariff construction might well argue in favor of adopting a more limited scope of judicial review than has heretofore been prescribed for cases of this nature. See Associated Grocers of Colorado, Inc. v. Atchison, T. & S. F. Ry. Co., 191 F.Supp. 435 (D.Col.1961). But the Court may not abdicate the responsibility that is rightfully lodged with it to insure that the Commission construes tariffs in accord with the law merely because the question of construction is painstakingly difficult to resolve. The Court, therefore, in the exercise of its independent judicial function has reviewed the tariffs in question in light of applicable legal principles of tariff construction. The Court has concluded that the order of the Commission must be set aside and its enforcement enjoined. To reach this determination, it was necessary for the Court in construing the tariffs to resolve only two questions: (1) May the intermediate rule of the Southern Freight Association tariff be applied to shipments originating at points other than those in Kentucky or at Ohio River crossings? and (2) If it may, did the Commission properly apply the intermediate rule?

## II. *Construction of the Tariff.*

### A. *Is the Commodity Tariff Restricted to Kentucky and Ohio River Crossings?*

Hygrade and the Commission assert that the commodity rates found in the Southern Freight Association Tariff from Evansville on the New York Central (NYC) apply over the NYC's single-line route to Cincinnati, on which route Indianapolis is alleged to be intermediate from Evansville. The carriers maintain that the commodity tariff provides rates only from points in Kentucky and from

Ohio River crossings, including Evansville, and not from points north thereof. They urge that the line of the NYC from Evansville to Cincinnati via Indianapolis may not be used as an available route in applying the provisions of the intermediate rule. The carriers insist that the commodity tariff was intended to apply only within the Southern Territory. They note that it is published solely by the agent for the Southern Territory, whereas the tariff containing the rates actually collected on the shipments are in a tariff published jointly by agents for the Central and Southern Territories and hence in an interterritorial tariff, whereas, in their view, the rates found in the commodity tariff are in an intraterritorial tariff.

On its face, the tariff provides that it applies to shipments from "Kentucky also Ohio River crossings," and the tariff contains an "Index of Stations" which lists points in Kentucky and the Ohio River crossings. Evansville, but not Indianapolis, is included. It is clear, however, that a general title page description of the territory for which rates are prescribed in a tariff, such as is found on the title page of the commodity tariff here, does not have the effect of limiting the application of the tariff, and particularly of the intermediate rules therein, to points within the territory generally described on the title page, Armour & Co. v. Chicago, B. & Q. R. Co., 215 I.C.C. 537, 539 (1936); A. B. Chance Co. v. Central of Georgia Ry. Co., 280 I.C.C. 93, 96 (1951); Pure Oil Co. v. Alton & S. R. Co., et al., 284 I.C.C. 461, 465–466 (1952); Armour & Co. v. Chicago, M., St. P. & Pac. R. Co., supra, 188 F.2d at 610–611. Restrictions on intermediate rules are permissible, but they must be clear and not merely inferred from the general provisions of the tariff or from its title page. The territorial descriptions of the tariff

under construction here are not unlike those of the tariff construed in Armour & Co. v. Chicago, B. & Q. R. Co., supra; and they are dissimilar, in that they are far less specific, from those of the tariff construed in Armour & Co. v. Chicago, M., St. P. & Pac. R. Co., supra. Therefore, the intermediate rule in the commodity tariff here in question is not limited to the territory specified on the title page of the tariff. To conclude otherwise would be to infer a restriction from the general territorial description on the face of the tariff, and this is not permissible. Armour & Co. v. Chicago, M., St. P. & Pac. R. Co., supra, 188 F.2d at 610–611. Had the carriers wished to specifically restrict the provisions of the commodity tariff or any part thereof only to shipments originating in Kentucky and at Ohio River crossings, they could have done so by stating that fact clearly in the tariff,[1] or by designating points of origin with greater particularity on the title page. The fact that the class rate tariff was published by agents for both the Central and Southern Territories and the commodity tariff by only the agent for the Southern Territory is a fact which merely gives rise to an ambiguity as to whether the commodity tariff was restricted to shipments originating in Kentucky or at Ohio River crossings, and as such, it is to be resolved against the carriers. National Van Lines, Inc. v. United States, supra, 355 F.2d at 333.

**B.** *Did the Commission Err in Applying the Intermediate Rule?*

The route employed to justify the application of an intermediate rule cannot under any circumstances be unreasonable. Whether the route is unreasonable will be determined by the extent and direction of the circuity and commercial usage of the route. A. E. West Petroleum Co. v. Atchison, T. & S. F.

---

1. Indeed, the carriers inserted a restriction in the commodity tariff prohibiting application of the particular rate item here involved to shipments via routes west of the Mississippi River with one exception. Thus, had the carriers so desired, they might in a similar manner have restricted the tariff or the rate item to preclude application to the shipments here involved.

Ry. Co., 212 F.2d 812 (8th Cir. 1954). Thus we must determine whether, to enable the commodity tariff to embrace these shipments, the Commission applied the intermediate rule to an unreasonable route.

To justify its application of the intermediate rule, the Commission relied on two facts: (1) the commodity tariff contained maximum circuity limits within which the constructed route fell; and (2) to conclude otherwise would restrict the originating carrier, the NYC, to a mere switching movement at Evansville.

The question posed is whether the maximum circuity limits contained in the tariff may be used to avoid the application of the principles announced in *West* to this situation. Here the record stands undisputed that there is no commercial usage of any kind of the constructed route, and indeed, that a shorter, though still circuitous, route exists from Evansville through Washington, Indiana, thence to Cincinnati and the destinations. Here the extent of the average circuity of the constructed route is 35% to 47%, depending upon whether the carriers' or the shippers' figures are used. For reasons stated below, the extent of circuity is not determinative of the issue.

 A tariff must be construed to avoid unjust, absurd, or improbable results. National Van Lines, Inc. v. United States, supra, 355 F.2d at 332; A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., supra, 212 F.2d at 816. Strict construction of the tariffs against the carriers that drafted them is not justified when such a construction would ignore a permissible and reasonable construction which conforms to the intentions of the framers of the tariff. National Van Lines, Inc. v. United States, supra, 355 F.2d at 333.

 *West* establishes beyond doubt that a route constructed for application of an intermediate route must be reasonable in light of three equally important factors: (1) the extent and (2) the direction of circuity and (3) the commercial usage of a route. In *West*, there was

no commercial usage of the route there condemned, and the route involved a back-haul with circuity of 35% to 62%. In the case most closely analogous to the instant case where an intermediate rule relating to point of origin was applied, the intermediate point of origin was found to be "directly intermediate over reasonably direct and regularly used routes embracing the routes of movement * * *." Armour & Co. v. Chicago, B. & Q. R. Co., 215 I.C.C. 537, 540 (1936). And the Courts have affirmed the Commission's refusal to apply an intermediate rule where circuity of 22.5% and no commercial usage existed. United States v. Interstate Commerce Commission, 153 F.Supp. 741 (D. Col.1956).

 It may be that the maximum circuity limitation in the commodity tariff satisfied the *West* requirement that the extent and direction of the circuity be reasonable. Where the carriers themselves establish a maximum limit of circuity, a route less circuitous than the maximum will be considered reasonable. The maximum circuity limitation may not, however, be used to defeat the remaining element to be considered in determining the reasonableness of a route. Here, like *West*, there was no commercial usage of the constructed route. In light of the evidence before the Commission on the absence of commercial usage, the Commission's determination that the constructed route was nevertheless reasonable was arbitrary and unsupported by sufficient evidence.

 Underlying the Commission's decision is the premise that since the constructed route physically exists, and since nothing in the tariff specifically prevents application of the intermediate route over the constructed route, the route is authorized and the rule must apply. Mere physical connections are not enough to establish a route. Thompson v. Missouri Pac. R. Co., 343 U.S. 549, 557–558, (1952); A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., supra, 212 F.2d at 816–817. Here the record shows beyond

**952**

question that as a matter of practice the carriers have never and do not now hold themselves out to provide service over the constructed route, and indeed, that no shipper has ever requested service to the southeastern destinations over the constructed route. Thus both the carriers' and the shippers' course of business negatives the existence of the constructed route.

■ The Commission sought refuge in noting that to conclude that the tariff is inapplicable over the constructed route would limit originating carrier to a mere switching movement. This point is without force. There is nothing unlawful about a carrier short-hauling itself on a voluntary basis, and by merely becoming a party to a tariff the carrier does not subject itself, nor hold itself out, to participate in unreasonable routes. In fact, the Commission can require a carrier to short haul itself under 49 U.S.C. § 15(3) and (4) where, as here, inclusion of a longer route would be unreasonable in light of the existence of another more practical and available through route. Thus, Commission's attempt to avoid the clear implications of *West* do not constitute legal distinctions and are without merit.

■ The Commission's reliance on the fact that nothing in the tariff specifically excludes its application to the constructed route is misplaced. To require the carriers to mention every conceivable restriction on routing is unwarranted, A. E. West Petroluem Co. v. Atchison, T. & S. F. Ry. Co., supra, 212 F.2d at 819–821, especially where, as here, there was at the time the tariff was drafted neither prior commercial usage of the constructed route nor reasonable likelihood of subsequent commercial usage, and there were in existence commercially-used direct through routes from Evansville to the destinations other than the constructed route. Thus, we conclude that the Commission's application of the intermediate rule was arbitrary and is condemned by the principles announced in the *West* case. Having reached this conclusion, it is unnecessary

to consider the other issues raised by the defendants.

It having been agreed that the railroads' complaint, challenging the legality of administrative determinations upon which the Interstate Commerce Commission reparation order was predicated and which the railroad cross-plaintiffs seek to enjoin under 49 U.S.C. § 17(9), should be determinative of the issues in this cause; and the parties, appearing by counsel, having been heard and the issues duly tried; and the Court having concluded that the railroad plaintiffs are entitled to judgment:

It is hereby ordered, adjudged and decreed that the above described report and order of the Interstate Commerce Commission entered on November 1, 1962 and May 27, 1963, respectively, are invalid, unenforceable, and are hereby set aside and enjoined; that the rates assessed by the railroads and paid by Hygrade constitute the legally applicable rates on the involved shipments and the complaint under 49 U.S.C. § 16(2) is hereby dismissed, with prejudice.