Carroll P. REED and William Levy, doing business under the name and style of North Conway Depot Company,

v.

Robert W. MESERVE et al.

Civ. A. No. 72–270.

United States District Court, D. New Hampshire.

Jan. 22, 1973.

142

Frederic K. Upton, Upton, Sanders & Upton, Concord, N. H., for plaintiff.

Sidney Weinberg, Boston, Mass., for trustees.

## OPINION

BOWNES, District Judge.

This is an action to enforce an Order of the Interstate Commerce Commission, and jurisdiction is founded upon 28 U.S.C. § 1336(a). Jurisdiction is also based on diversity of citizenship and jurisdictional amount. 28 U.S.C. § 1332.

The issue in this case is whether the North Conway Depot Company, as a prospective purchaser of the 8.5 mile segment of land and trackage of the Conway Branch extending between Conway and Intervale, New Hampshire, would be acquiring said line "for the

purpose of continued operation" within the meaning of the condition which the Interstate Commerce Commission attached to its final Order of July 7, 1972, granting permission to the defendant-Trustees of the Boston and Maine Corporation to abandon the Mt. Whittier-Intervale segment of the railroad line. The condition reads as follows:

*It further appearing*, That our permission to abandon the Intervale-Mt. Whittier segment of line is conditioned upon resale of the involved line to any responsible person for the purpose of continued operation within 60 days from the date of issuance of a certificate herein; (Preamble to Order of I.C.C., Division 3, acting as an Appellate Division, dated July 7, 1972, bearing Service Date of July 24, 1972, in F.D. No. 25995).

The defendant-Trustees admit that the plaintiff partnership is a "responsible person" within the meaning of the condition imposed by the final Order of the I.C.C. dated July 7, 1972, but deny that the purpose of the plaintiffs in acquiring the 8.5 mile segment is for "continued operation" within the meaning of the Order.

A temporary restraining order prohibiting defendant-Trustees and any officer, agent, or employee of the Boston and Maine Corporation, Debtor, from accepting any bid or bids which have been received for the purchase of that portion of the railroad extending between the Villages of Conway, New Hampshire, and Intervale, New Hampshire, and from entering into any agreement for the sale thereof and from transferring or conveying said property was issued on December 19, 1972. Pursuant to this court's order, the plaintiffs posted a $25,000 surety bond.

A hearing was held on January 3, 1973, at which Richard Hamilton, Executive Vice-President of the White Mountain Attractions Association, and Dwight Smith, Regional Sales Manager of the Boston and Maine Corporation, testified.

## STIPULATED FACTS

By application filed December 18, 1969, as amended, defendant-Trustees petitioned the Interstate Commerce Commission for authority under the provisions of the I.C.C. Act, 49 U.S.C. § 1(18)–(20), to abandon a segment of its Conway Branch, approximately 31 miles in length, between Ossipee, New Hampshire, and Intervale, New Hampshire, and to dispose of the trackage and real property thereof. The northerly portion of said segment between the Villages of Conway, New Hampshire, and Intervale, New Hampshire, is approximately 8.5 miles in length. Plaintiffs are contesting the action of the defendant-Trustees in undertaking to dispose of this 8.5 mile segment by invitation for general bids.

The application of the defendants was docketed with the I.C.C. as Finance Docket No. 25995. The Hearing Examiner of the Commission heard evidence from the applicants and protestants to the application and filed his recommended report, served November 26, 1971, together with a recommended certificate and Order. The Examiner recommended a denial of the application to abandon a 12 mile segment of the line between Ossipee, New Hampshire, and Mt. Whittier, New Hampshire, at the southerly end of the line sought to be abandoned, and further recommended the issuance of a certificate of public convenience and necessity authorizing the abandonment of the line between Mt. Whittier, New Hampshire, and Intervale, New Hampshire, approximately 18 miles in length and hereinafter referred to as the "abandonment line."

Protestants, the State of New Hampshire and certain shippers, excepted to the recommended report, certificate, and Order of the Hearing Examiner. The I.C.C., Division 3, by its decision, certificate, and Order dated March 13, 1972, modified the recommended report, certificate, and Order of the Examiner.

Protestants petitioned the Commission for further hearing, reconsideration, and

modification of the Order of March 13, 1972. The Commission, Division 3, acting as an appellate division, denied the protestants' petition and the motions contained therein in its Order dated July 7, 1972, bearing a Service Date of July 24, 1972, and made the decision, certificate, and Order of the above proceedings effective twenty days from the Service Date of the Order.

The plaintiffs desire to acquire the 8.-5 mile segment of the Conway Branch extending between the Villages of Conway, New Hampshire, and Intervale, New Hampshire, for the operation of a scenic excursion railroad for the carriage of passengers. The carriage of passengers in the scenic excursion railroad operation will be confined to the 8.-5 mile segment of the "abandonment line." In furtherance of their proposed railroad operation, the plaintiffs have acquired in the Village of North Conway the former Depot Building, a pagoda-like structure of unusual and attractive architecture, and the former railroad freight house building, engine house, turntable, and miscellaneous other buildings, together with the land situated along the easterly and westerly sides of the location of the Conway Branch of the railroad. In preparation for the launching of their plan for the operation of a scenic excursion railroad, the plaintiffs, in association with Dwight Smith, have acquired and restored to operating condition a steam locomotive and ten passenger cars, together with railroad artifacts of historical significance. Plaintiffs propose to install a railroad museum in the Depot Building as part of the over-all operation of the proposed excursion railroad.

The plaintiffs, representing themselves as "responsible persons" desirous of acquiring the 8.5 mile segment of the line "for the purpose of continued operation," have written several letters (Pl. Ex. 1) to the defendant-Trustees requesting that the Trustees enter into negotiations with the plaintiffs within the sixty day period allowed by the Interstate Commerce Commission for the sale of this segment of the line. The Trustees have refused to recognize the plaintiffs as meeting the condition of the I.C.C. Order and have refused to enter into negotiations with them for resale.

On November 14, 1972, and more than sixty days after the effective date of the final Order of the Commission, the defendant-Trustees issued an Invitation for Bids for the "abandonment line" between Mt. Whittier, New Hampshire, and Intervale, New Hampshire. Sealed bids were received and opened on December 15, 1972, pursuant to said invitation. No bid has been accepted for the 8.5 mile segment involved in this proceeding.

## FINDINGS AND RULINGS

■■ Before reaching the merits of this controversy, a matter of jurisdiction must be resolved. The scope of judicial review does not extend to matters within the primary jurisdiction of the Interstate Commerce Commission. Hygrade Food Prod. Corp. v. New York Central Railroad Co., 266 F.Supp. 946, 948–949 (N.D.Ill.1967); I. C. C. v. Atlantic Coast Line R. Co., 383 U.S. 576, 579–580, 594, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966). Here the Commission in its final Order of July 7, 1972, attached a condition to its permission authorizing the defendant-Trustees to abandon the Mt. Whittier-Intervale segment of the line. This court is not reviewing the question of whether the I.C.C. abused its discretion in permitting abandonment of that part of the line. The sole question presented for review is the construction of the meaning of the condition which the I.C.C. attached to its Order authorizing abandonment of the Mt. Whittier-Intervale segment of the line. This question does not raise "issues of transportation policy which ought to be considered by the Commission in the interests of a uniform and expert administration of the regulatory scheme laid down by" the Interstate Commerce Act, see United States v. Western Pacific R. Co., 352 U.S. 59, 65, 77 S.Ct. 161, 166, 1 L.Ed.2d 126 (1956); nor is "the in-

quiry . . . essentially one of fact and of discretion in *technical* matters, . . .," see Great Northern R. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922). [Emphasis supplied.] The sole issue involved here, whether the plaintiff comes within the purview and ambit of the condition set forth in the I.C.C. Order of July 7, 1972, is not beyond the understanding of the Court unassisted by expert guidance. Its resolution does not depend upon evaluation of "voluminous and conflicting evidence" that can only be accomplished by expert knowledge of the transportation industry. See Great Northern R. Co., *supra,* 259 U.S. 291, 42 S.Ct. 477; National Van Lines, Inc. v. United States, 355 F.2d 326 (7th Cir. 1966). Thus, the construction of the condition presents a purely legal issue which this court must and should decide. See Hygrade Food Prod. Corp., *supra,* 266 F.Supp. 946, 948–949; A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., et al., 212 F.2d 812, 813–814 (8th Cir. 1954); and Jay Street Connecting Railroad v. United States, 174 F.Supp. 609, 617 (E.D.N.Y.1959).

■ Under 49 U.S.C. § 1(20), the I. C.C. has authority, in authorizing an abandonment, to ". . . attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require." "Public convenience and necessity" are not determined by the Commission merely to protect the railroad, but to protect interstate commerce from onerous burdens which may affect the efficiency and the ability of the carrier to perform its duty to the public. Colorado v. United States, 271 U.S. 153, 162, 46 S.Ct. 452, 70 L.Ed. 878 (1926).

■ The Commission, in the exercise of its authority under 49 U.S.C. § 1(20), has proscribed conditions to an abandonment which have no relation to the Commission's usual areas of jurisdiction over the interstate carriage of freight and passengers. See Burlington North-ern, Inc., abandonment of part of its branch line between Fremont and Kenmore, Washington (F.D. No. 26638, Nov., 1972), where the Commission (Division 3) in a report on reconsideration affirmed abandonment and conditioned its permission to abandon so as to require the railroad to sell the abandoned right of way as *public park land.* It would seem that any *reasonable* condition which is in the public *interest* may be imposed by the I.C.C. pursuant to its authority under 49 U.S.C. § 1(20).

Richard Hamilton, Executive Vice-President of the White Mountain Attractions Association, testified that the proposed excursion railroad would add to the recreational attractions in the North Conway, New Hampshire, area, thereby benefiting local business and increasing employment in the region. He further testified that the White Mountain Attractions Association is in favor of such an excursion railroad, and he believes that the public interest would be promoted thereby.

In order to determine if the plaintiff, as a prospective purchaser of the 8.5 mile segment of the Conway Branch, is acquiring "for the purpose of continued operation," it is necessary to follow the evolution of the condition to its final language.

The Hearing Examiner made the following findings with respect to the proposed use to be made of the 8.5 mile segment by the North Conway Depot Company:

The North Conway Depot Company, a partnership, is located at North Conway and takes no position with regard to the proposed abandonment. However, it owns the former railroad depot building in North Conway which is a unique example of early railroad architecture as well as various other buildings in the area and hopes to acquire all or a portion of the track between Conway and Intervale *to operate a tourist or excursion railroad limited to passenger service* in conjunction with this property if the

line is abandoned. It hopes to purchase the 8.5 mile segment between valuation stations 3472+00 and 3862+40 and an offer and counter offer have already been made for the portion of the line running from the North Conway terminal to Conway, a distance of approximately 5.5 miles. It feels that its proposed operation would be of economic benefit to the area. [Emphasis supplied.] (Report, Certificate and Order Recommended by John Roger Corcoran, Hearing Examiner, p. 18, Served Nov. 26, 1971, F.D. No. 25995).

It is clear that the Hearing Examiner understood that North Conway Depot Company intended to provide *passenger service only*. In the portion of his Report entitled "Discussion and Conclusions," at pages 22 and 23, the Examiner reached the following conclusions with respect to the persons to be afforded a priority in right to purchase:

The State of New Hampshire has requested that, if the application is approved, the actual dismantlement of the branch and the sale of the right-of-way be postponed for one year to allow the State and local government authorities the right to purchase all or part of it for public use including the possible operation of a short line railroad. In the circumstances in this proceeding, the examiner is of the opinion that to require applicant to maintain its facilities intact for the period of a year after it has been determined that abandonment is warranted, is not reasonable, particularly in the absence of any concrete evidence that they would be purchased. Moreover, it should be noted, that the applicant and the North Conway Depot Company are engaged in negotiations for the sale and purchase of a portion of the track and right of way at the northern end of the line for operation of an excursion railroad line which would be of economic benefit to the area. In these circumstances and particularly the absence of any specific objection to this contingent proposal by the State, the portion sought to be purchased by the North Conway Depot Co. should not be subject to any priority in right to purchase by the State. On the other hand, here where the applicant maintains substantial track in the State and where the State has evidenced throughout the proceeding a legitimate and sincere interest in the maintenance of all service possible in the future, it does not appear unreasonable to condition the abandonment upon applicant's selling the branch or any part thereof not involved in negotiations for sale between the applicant and the North Conway Depot Company to any governmental authority of the State of New Hampshire within 60 days from the issuance of the certificate herein at a price not less than the fair net salvage value thereof.

When the Examiner's Report came before the Commission, Division 3 (to whom it was referred), entered an Order dated March 13, 1972, bearing Service Date of April 20, 1972, modifying the conditions recommended by the Hearing Examiner, as follows:

*It appearing*, That with respect to the northern segment of line between Mt. Whittier and Intervale, N. H., the hearing examiner found that only a minimal amount of traffic was handled to or from points thereon and, accordingly, found that the present and future public convenience and necessity permit abandonment of said segment of line;

*It further appearing*, That the hearing examiner recommended that permission to abandon the northern portion of the line be conditioned upon resale of the involved properties within 60 days from the date of issuance of a certificate authorizing abandonment to any governmental authority of the State of New Hampshire, except any portions of line involved in negotiations for sale to the North Conway Depot Company; that all parties have had notice of the proposed abandonment for a period exceeding

two years; and that, accordingly, the motion of the State of New Hampshire should be denied; and

*It further appearing,* That there is no indication that negotiations with the North Conway Depot Company have been finalized or whether they will, in fact, be successful; that other persons may be interested in purchasing the portion of rail line; and that, accordingly, the condition should be modified to provide for resale to any responsible person for the purpose of continued operation;

 * * * * * *

This modified condition was confirmed by Division 3 on appeal.

In summary, the original condition recommended by the Hearing Examiner required retention of the Mt. Whittier-Intervale segment for sixty days to accommodate a sale to New Hampshire governmental authority except for the 8.5 mile segment involved in negotiations between the Trustees of the Railroad and the North Conway Depot Company. No restriction was placed on the free transfer of the 8.5 mile segment to the North Conway Depot Company if a purchase and sale thereof could be negotiated between them. Division 3, fearing that negotiations between the Trustees and the North Conway Depot Company might not be successful, made two changes in the condition:

(1) The restriction against free transfer was made applicable to the entire line authorized for abandonment, including the 8.5 mile segment sought by the North Conway Depot Company; and

(2) The availability, previously limited to New Hampshire governmental authority, was expanded to include "any responsible person for the purpose of continued operation."

The clear purpose of the Commission, in imposing the restriction, was to preserve the line as an operating railroad, as opposed to dismantlement, salvage, and piecemeal sale. Nowhere is it suggested, in any of the I.C.C. proceedings, that a sale to the North Conway Depot Company for the operation of a scenic or excursion railroad limited to the carriage of passengers would not be for the purpose of "continued operation."

The suggestion by the defendant-Trustees that by the use of the words "continued operation" the I.C.C. intended to require that a railroad operation provide both freight and passenger service makes little sense in light of the economic evidence received in the I.C.C. proceedings and the testimony of Dwight Smith. Indeed, the Phase I Report of Herbert E. Bixler, attached to the State's motion for suspension of the abandonment proceedings, dated September, 1971, stated that freight traffic on the northerly portion of the Conway Branch would not support any short line operation over it.

The Conway Branch and its associated lines present a mixed problem. Largely because of the very heavy gravel traffic from Ossipee the lines handled 6057 cars in 1970, and there has been no suggestion of the abandonment of the line from Ossipee south. The abandonment of the remainder of the line, however, (31 miles) is pending before the ICC. With less than 300 cars handled on this northern portion of the line in 1970 there is *little likelihood of the establishment of a viable short line on freight business alone.* There is a possibility that persons who have expressed an interest in using some of the line for excursion passenger service might be persuaded to operate a skeleton freight service, and that possibility should be thoroughly explored. [Emphasis supplied.] (Phase I, Bixler Report, p. 12).

Furthermore, Smith testified that he investigated the possibility of establishing and operating a short haul freight operation over the *8.5 mile segment* of the "abandonment line" and concluded that such an operation would not be economically viable. He also testified that the North Conway Depot Company stands ready to enter into an agreement with any short haul freight operator who

148

wishes to use the 8.5 mile segment of the line to provide freight service.

■ The Trustees sought to abandon 18 miles of line between Mt. Whittier and Intervale, New Hampshire, because the freight service conducted by the Boston and Maine Corporation over said segment of line was of insufficient volume to make the operation profitable. The I.C.C. found that the public convenience and necessity would be furthered by permitting the abandonment of said segment of line. Since the I.C.C., in effect, authorized the discontinuance and abandonment of railroad service over the 8.5 mile segment in question, I find that the I.C.C., when it conditioned resale of the land and trackage to "responsible person[s] for the purpose of continued operation," could not have intended that freight service, in addition to passenger service,[1] was necessary for "continued operation."

I find that the purpose of the condition was an attempt to keep the abandoned segment intact as a railroad line and to prevent its dismantlement. The plain meaning of the words "continued operation" is to continue the operation of a railroad over the abandoned line. If the Commission intended the phrase "continued operation" to mean a freight and passenger operation, these words could have been used by the Commission to signify such an intention.

In the Commission's Order of March 13, 1972, bearing a Service Date of April 20, 1972, there is the following significant language:

It further appearing, That there is no indication that negotiations with the North Conway Depot Company have been finalized or whether they

will, in fact, be successful; that other persons may be interested in purchasing the portion of rail line; and that, accordingly, the condition should be modified to provide for resale to any responsible person for the purpose of continued operation; [Emphasis supplied.]

This modification of the original condition indicates that the North Conway Depot Company was deemed by the Commission itself to be a "responsible person for the purpose of continued operation." The use of the word "other" clarifies the Commission's intention that "other persons" besides the North Conway Depot Company were to be given the authorization to purchase the 8.5 mile segment in question if they were also "responsible person[s] for the purpose of continued operation." It is to be noted that the condition as modified was confirmed by Division 3 on appeal.

■ In sum, I hold that the North Conway Depot Company would be a "responsible person" acquiring said line "for the purpose of continued operation," and, as such, is entitled to preferential consideration for a period of sixty days from the date of this decision, pursuant to the Commission's Order of July 7, 1972, before the defendant-Trustees may proceed with the free transfer of title of the 8.5 mile segment of the "abandonment line."

The preliminary injunction will continue in effect for a period of sixty days from the date of this decision, during which time the defendant-Trustees and the plaintiffs shall enter into good faith negotiations for the sale and purchase of said 8.5 mile segment of the "abandonment line."

So ordered.

1. The defendant, in its answer filed January 15, 1973, contends that the plaintiff's proposed excursion railroad would not involve "carriage of passengers" within the meaning of the Interstate Commerce Act, 49 U.S.C. § 1(1)(a). This was obvious to the Commission when it issued its final order containing the condition in question. This court takes judicial notice of the fact that for many years there has been no "carriage of passengers" by the Boston and Maine Railroad in New Hampshire. It is also to be noted that nowhere in the Commission's order is it expressly or impliedly suggested that "continued operation" involves "carriage of passengers" within the meaning of the Interstate Commerce Act, 49 U.S.C. § 1(1)(a).