**FORT WORTH AND DENVER RAILWAY COMPANY et al., Plaintiffs-Appellees,**

v.

**GOODPASTURE, INC., Commodity Credit Corp., et al., Defendants-Appellants.**

**No. 30136.**

United States Court of Appeals, Fifth Circuit.

May 10, 1971.

George H. Hagle, Andrews, Kurth, Campbell & Jones, Houston, Tex., for Ft. Worth and D. Ry. Co.

Benjamin R. Powel, McCleod, Alexander, Powel & Apffel, Galveston, Tex., S. R. Brittingham, Jr., Gen. Counsel, Richard K. Knowlton, Asst. Gen. Counsel, Chicago, Ill., for The Atchison, Topeka and S. F. Ry. Co.

Eugene J. Dozier, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for Chicago, R. I. & P. RR. Co.

James C. Winters, Houston, Tex., for Union Equity Corp.

Before SKELTON*, Judge, and MORGAN and CLARK, Circuit Judges.

SKELTON, Judge:

Three railroads, Fort Worth and Denver Railway Company, The Atchison, Topeka and Santa Fe Railway Company, and Chicago, Rock Island and Pacific Railway Company, Plaintiffs, filed three separate suits to collect storage and demurrage charges due on 7,408 carloads of grain delivered to and exported by Goodpasture, Inc., an elevator at Houston, Texas, from July 1, 1964, to December 31, 1967. The plaintiffs are common carriers operating in interstate and foreign commerce. The defendants in the suits are Goodpasture Inc., a Texas Corporation, and thirty · other corporations which owned or controlled the grain. Goodpasture filed a cross-action in each of the suits for storage and demurrage already paid. The three suits were consolidated, and after a trial, the District Court entered judgment for the plaintiffs against Goodpasture for $201,516.20 plus interest in the sum of $46,683.97, all in the total sum of $248,200.17. Secondary liability was adjudged against the other defendants as stated in the judgment with the right of indemnity in favor of the other defendants against Goodpasture for any amounts they are required to pay plaintiffs under the judgment. The cross-action of Goodpasture was dismissed. Goodpasture has appealed from this judgment. We affirm.

Frank A. Leffingwell, Dallas, Tex., G. Ernest Caldwell, Knight, Prappas, Caldwell & Moncure, William R. Powell, Houston, Tex., for appellant, Goodpasture, Inc.

James R. Gough, Rex R. Green, Asst. U. S. Attys., Houston, Tex., for appellant, Commodity Credit Corp.

* Honorable Byron C. Skelton, U. S. Court of Claims, Sitting by designation.

The three cases were filed in December 1967, for the collection of unpaid storage and demurrage. The facts show that all of the shipments of grain were delivered to Goodpasture's elevator in Houston, Texas, except 19 cars consigned to others which cars were diverted to Galveston, Texas, at such consignee's request. The cars delivered to Goodpasture's elevator were placed on its interchange track when possible. However, many of the cars were held for delivery short of Houston by plaintiffs, because Goodpasture was not in a position to receive them, and constructive placement notices as to these cars were sent by plaintiffs to Goodpasture. These cars were delivered in due time to Goodpasture's interchange track upon its orders, where the cars were unloaded. Goodpasture had exclusive control of the ordering in of all cars to its elevator interchange track and also had exclusive control of all cars after they were placed on its interchange track. It unloaded all cars and processed the grain therefrom for export for itself and for all the other defendants. The controversy between the parties arose over charges for storage and demurrage with reference to cars of grain that were held in constructive placements by plaintiffs short of Goodpasture's elevator when Goodpasture was unable to receive them on its interchange track because of crowded conditions or other reasons, until such time as plaintiffs could deliver them to Goodpasture's track. The plaintiffs contended that the charges made by them were in accordance with their published tariffs and the service orders of the Interstate Commerce Commission. Goodpasture contended that (1) the charges were unjust and unreasonable and in violation of Sections 1 and 6 of the Interstate Commerce Act (49 U.S.C. §§ 1, 6), and (2) the plaintiffs had erroneously interpreted and applied such tariffs. After these suits were filed, Goodpasture filed a complaint with the ICC raising these same questions and asking for reparation and a cease and desist order. In the meantime, it asked the trial court to suspend proceedings in this case until the ICC could determine these questions. The trial court refused, and in doing so expressly stated that it would not rule on whether or not the charges were reasonable as that was a matter within the primary and exclusive jurisdiction of the ICC, but that it would interpret and apply the tariffs inasmuch as they were in non-technical language and did not require the expertise of the ICC.

At the pretrial conference in the trial court, it was agreed that the following tariffs and service orders were in effect at the time of the shipments, the construction and application of which was in dispute:

I. Rule 6, Item 230 of the 25 series tariffs which were in effect during all of the times in question provided in part as follows:

(a) Free time * * * will be allowed * * * for the purpose of unloading, it being understood that railroads are not required to receive or deliver freight except during working hours, 7:00 a. m. to 6:00 p. m.

  \*    \*    \*    \*    \*    \*

2. When delivery of a car * * * cannot be made on account of the inability of elevator to receive it, or because of any other condition attributable to the consignee or the elevator, and it cannot be reasonably accomodated [sic] on tracks at destination, it will be held at an available hold point and notice of such holding will be sent or given the consignee or party entitled to receive same; the free time to be computed from the first 7:00 a. m. after such notice is sent or given. The time of movement between the hold point and destination will not be computed against the car.

2½. When delivery of a car * * * cannot be made on account of the inability of elevator to receive it, or because of any other condition attributable to the consignee or the elevator, car will be held on an available track at destination, and notice of such holding will be sent or given

the consignee or party entitled to receive same; the free time to be computed from the first 7:00 a. m. after notice is sent or given. If car cannot be reasonably accomodated [sic] on tracks at destination because of railroad yard congestion, it will be held at an available hold point short of destination and in that event notice shall not be given until car has arrived at destination and made available for inspection. The free time to be computed from the first 7:00 a. m. after notice is sent or given.

[412] II. Item 160 of the 25 series tariffs and Service Order 953, one or both of which were in effect throughout the time in question provide in part:

"The free time * * * shall be computed from the first 7:00 a. m. after notice of arrival or constructive placement is sent or given to the party entitled to receive same until final release of the car, less time required to move a constructively placed car from hold point to point of unloading."

III. During most of the period in question there were in effect Interstate Commerce Commission service orders which provided in part as follows:

(a) Each common carrier by railroad subject to the Interstate Commerce Act shall observe, enforce, and obey the following rules, regulations, and practices with respect to its car service:

(1) Placing of Cars:

(i) Loaded cars, which after placement will be subject to demurrage rules applicable to detention of cars awaiting unloading, shall be actually placed within 24 hours, exclusive of Sundays and holidays, following arrival at destination.

(ii) Actual placement means placing of a car on industrial interchange

tracks or other-than-public-delivery tracks serving the consignee, or on public delivery tracks.

(iii) When delivery of a car * * * cannot be made because of any condition attributable to the consignor or consignee, such car will be held at destination or, if it cannot reasonably be accomodated [sic] there, at an available hold point, and constructive placement notice shall be sent or given the consignor or consignee, in writing, within 24 hours exclusive of Saturdays, Sundays and holidays, after arrival of car at destination or other hold point.

Goodpasture argues that the ICC has primary and exclusive jurisdiction over the reasonableness of the rates. The plaintiffs agree that this is correct. We are also in agreement that this is the law. *See* Great Northern Railway v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); United States v. Western Pacific Railroad, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). However this argument is not helpful to Goodpasture because that question is not involved here. The district court specifically refused to consider and rule on the reasonableness of the rates. Furthermore, on April 22, 1970, the ICC ruled adversely to Goodpasture after a hearing on its complaint when it found that Goodpasture had not shown that the rates were unjust or unreasonable either as to past or future shipments and dismissed its complaint.[1] Under these circumstances, there is no merit to Goodpasture's request for suspension of proceedings in this case until the ICC can determine the reasonableness of the rates.

Goodpasture also contends that the plaintiffs improperly construed and applied the tariffs under which the demurrage was collected in violation of 49 U.S.C. § 6. It says further that the construction and application of tariffs is a matter within the primary and exclu-

1. See decision of the ICC of April 22, 1970, in No. 35011, Goodpasture, Inc. v.

The Atchison, Topeka and Santa Fe Railway Company, et al.

sive jurisdiction of the ICC. It is our opinion that the ICC has no such primary and exclusive jurisdiction unless the tariffs are couched in highly technical words used in a peculiar sense requiring the expertise of the ICC for their proper construction and application. Great Northern Railway v. Merchants Elevator Co., *supra*; and United States v. Western Pacific Railroad, *supra*. This was not the case here. The district court found that the facts were relatively undisputed and the tariffs were being used in their ordinary sense, and that the court was not required to refer the matter of construction to the ICC. We think the district court was correct in this decision and that it had jurisdiction to construe the tariffs.[2]

█ This brings us to the only real issue in the case, which was the amount of free time and the amount of travel time allowed by the railroads to defendants with respect to cars that were constructively placed short of Goodpasture's interchange track. As to the free time, it was undisputed that 10 days were allowed until 1967 when it was changed to 7 days by the ICC. The above quoted tariffs provide that the free time was "to be computed from the first 7:00 a. m. after such notice [of constructive placement] is sent or given." When cars were placed in constructive placement, the plaintiffs sent the required notices thereof to Goodpasture and calculated the free time, as well as the storage and demurrage charges with reference thereto. There was nothing technical nor peculiar about this that required any construction or application of the tariffs by the ICC. We think the trial court correctly ruled that he had jurisdiction of this matter and that it correctly construed and applied the tariffs and service orders.

█ Goodpasture contended that paragraph 2½ of Rule 6, Item 230 of the 25 series tariffs quoted above prohibited the CRI&P and FW&D railroads from making constructive placement of cars short of Houston. The district judge correctly ruled that the service orders quoted in III above overruled the provisions of paragraph 2½ and allowed these railroads to constructively place cars short of Houston when they could not be received on Goodpasture's interchange track. This is so because when there is a conflict between tariffs and service orders, the service orders control. *See* Reading Co. v. C.C.C., 3 Cir., 1961, 289 F.2d 744.

Goodpasture complained about the travel time allowed by the plaintiffs and the court for the movement of cars from constructive placement to Goodpasture's interchange track. It will be noted that the above quoted tariffs and service orders provide: "The time of movement between the hold point and destination will not be computed against the car," and other like provisions. The district court found that the time of movement of constructively placed cars from constructive placement points to Goodpasture's elevator, in each case, was less than 24 hours. It is undisputed that plaintiffs allowed 24 hours for the movement of each of the cars from the hold points to Goodpasture's track, which was not counted against the cars. It is our opinion that there is no merit to Goodpasture's contention in this regard.

We conclude and hold that the district judge ably disposed of the issues in this case and that the judgment of the district court should be affirmed. It is accordingly

Affirmed.

2. In its complaint filed with the ICC, Goodpasture asked it to construe and apply the tariffs. The ICC refused to do so, saying jurisdiction over this matter had been conferred on the district court before the complaint was filed with the ICC, citing 49 U.S.C. § 9.