Beverly **BISHOP**, individually and on behalf of Volunteers Organized In Community Education, Inc., and Charles Brown, individually and on behalf of Organization of Low-Income People, Inc., and on behalf of all other persons similarly situated

v.

**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.**

Civ. A. No. 72–35.

United States District Court,
D. New Hampshire.

March 30, 1972.

Richard Cotton, N. H. Legal Assistance, Concord, N. H., for plaintiff.

Franklin Hollis, Sulloway, Hollis, Godfrey & Soden, Concord, N. H., for defendant.

David A. Brock, U. S. Atty., Concord, N. H., amicus curiae.

## OPINION AND ORDER ON MOTION TO DISMISS

BOWNES, District Judge.

Plaintiffs, all low-income purchasers of electricity in New Hampshire whose income is near or below the poverty level, challenge defendant's proposed price increase. Jurisdiction is invoked and injunctive relief sought under § 210(a) of the Economic Stabilization Act of 1970, as amended by The Economic Stabilization Act Amendments of 1971, P.L. 92–210, 85 Stat. 748–750 (December 22, 1971). Declaratory relief is requested pursuant to 28 U.S.C. §§ 2201, 2202.

The matter is now before the court on defendant's motion to dismiss on the grounds that plaintiffs are without standing and cannot maintain a class action; plaintiffs have failed to exhaust administrative remedies; primary jurisdiction does not rest in this court; and plaintiffs have failed to state a cause of action.

■ Plaintiffs have standing to challenge defendant's proposed price increase and may maintain this action as a class action. Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); F.R.Civ.P. 23.

■ There is no merit to defendant's argument that the plaintiffs have failed to exhaust administrative remedies since there are no administrative remedies available to the plaintiffs. What the defendant really claims is that the plaintiffs have failed to invoke the necessary administrative procedures prior to bringing this action. The plaintiffs initially presented their claim to the New Hampshire Public Utilities Commission and, after that, filed a request for rulings with the Internal Revenue Service pursuant to 6 C.F.R. §§ 201.23, 401.10, 37 F.R. 1012–1013 (January 21, 1972). Section 210(a) of the Economic Stabilization Act provides:

Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

Nothing in the Act requires that administrative steps be taken prior to instituting suit in the Federal District Court. I find that the plaintiffs have complied with necessary administrative procedures.

Primary jurisdiction rests in this court, rather than any regulatory agency, because the factual question of the propriety of a price increase under Price Commission guidelines is not presented. Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S. Ct. 477, 66 L.Ed. 943 (1922).

The issue, therefore, is whether the complaint states a claim against defendant upon which relief can be granted, and this depends on whether Price Commission regulations prohibit the defendant from raising electric prices on an interim basis.

The defendant filed a proposed price increase on July 8, 1971, to become ef-

fective August 9, 1971. On July 14, 1971, the New Hampshire Public Utilities Commission suspended the price increase under N.H. RSA 378:6 which provides:

> *Suspension of Schedule.* Pending any such investigation and the decision thereon, the commission shall have power, by an order served upon the public utility affected, to suspend the taking effect of said schedule and to forbid the demanding or collecting of the rates, fares, charges or prices covered by the schedule for such period or periods, not to exceed twelve months in all, as in the judgment of the commission may be necessary for such investigation. *If for any reason the commission is unable to make its determination prior to the expiration of six months from the originally proposed effective date of said schedule, the public utility affected may place the filed schedule of rates in effect, pending expiration of such twelve months' suspension period,* upon furnishing the commission with a bond in such form and with such sureties, if any, as the commission may determine, to secure the repayment to the customers of the public utility of the difference, if any, between the amounts collected under said schedule of rates and the schedule of rates determined by the commission to be just and reasonable. [Emphasis added.]

The Public Utilities Commission did not make its determination prior to the expiration of the six month period, defendant filed a repayment bond with the intention of raising its prices on February 11, 1972, and plaintiffs filed their complaint with this court on February 14, 1972, seeking a ruling that federal regulations prohibited any price increase without good cause certification to the Price Commission. When the complaint was filed 6 C.F.R. § 300.16(i) (3) was the only regulation which governed interim price increases. It provided:

> Notwithstanding any other provision of this section, no price of the kind covered by this paragraph (i) may be increased before the end of the maximum suspension period permitted by law unless the regulatory agency has certified to the Price Commission that there is good cause for an earlier effective date, together with its reasons therefor, and the Price Commission has approved that certification.

Under this regulation, the critical question was whether the "maximum suspension period permitted by law" is six months (with a bond) or twelve months. However, § 300.16(i) (3) was amended on March 17, 1972,[1] and a new section was added to the regulations on the same day. The new section, § 300.16a, provides, in pertinent part:

> *Interim rates.* Any price increase that is authorized by law or order of a regulatory agency to go into effect after March 19, 1972, subject to accounting and refund, and before the issuance of further regulations on the subject by the Price Commission, may be put into effect without regard to this part. The Price Commission intends, within a short time, to issue regulations prescribing the conditions under which increases that are subject to accounting and refund will be treated. Those regulations, including any review and Price Commission actions authorized therein, will when issued, apply to increases authorized by this paragraph as well as to increases authorized after the regulations are issued. Section 300.16a(i).

The purpose of new regulation § 300.16a is to provide review of rate increases by federal and state regulatory agencies under rules issued by those agencies which would incorporate the

---

1. The amendment became effective on March 20, 1972, and added the following words before the period: "or unless the interim price represents a price increase of a lesser amount than a previously filed price of the public utility which has already been suspended for the maximum period."

criteria set forth in § 300.16a(c).[2] Section 300.16 still governs some price increases, but will eventually be phased out. Section 300.16(a). The issue, therefore, is one which was not anticipated when plaintiffs filed their complaint but, because of the new regulation which became effective four days before the hearing, is now critical—whether § 300.16(i) (3) or § 300.16a(i) controls in the instant case.

Plaintiffs' position is that the first sentence of § 300.16a(i) incorporates § 300.16(i) (3) and requires that good cause for the interim price increase be certified to the Price Commission by the New Hampshire Public Utilities Commission in accordance with § 300.16(i) (3). This would be a tenable position if the language "without regard to this *section* [§ 300.16a]" had been used. But, as defendant points out, the word "part" is used rather than "section." This results in a very broad exception to *part 300*, Chapter III, of the Economic Stabilization Act regulations. Plaintiffs also argue that § 300.16(i) (3) must still limit interim price increases without good cause certification because it was amended at the same time § 300.16a was promulgated. This argument ignores the sweeping exception contained in § 300.16a(i) and the fact that new regulations will soon be issued and:

> [t]hose regulations, including any review and Price Commission actions authorized therein, will when issued, apply to increases *authorized by this paragraph* as well as to increases authorized after the regulations are issued. Section 300.16a(i). [Emphasis added.]

Hence, it is unlikely that interim price increases arising by operation of state law and § 300.16a(i) after March 19, 1972, will not be reviewed by the Price Commission, for the new regulations will apply to increases now allowed by § 300.16a(i).

 I rule that § 300.16a(i) of the Price Commission's regulations applies in this case and that § 300.16(i) (3) does not apply.[3] Since there is no law to support plaintiffs' claim, the complaint fails to state a claim against defendant upon which relief can be granted and must be dismissed. F.R.Civ.P. 12(b) (6). This ruling is not to be interpreted as granting defendant permission to raise its electricity prices. The question of when and if prices can be increased must be determined by the New Hampshire Public Utilities Commission and the Federal Price Commission.

So ordered.

2. *General criteria for public utility price increases.* The general criteria of the Price Commission for public utility price increases are:

(1) The increase is cost-justified and does not reflect future inflationary expectations.

(2) The increase is the minimum required to assure continued, adequate and safe service or to provide for necessary expansion to meet future requirements.

(3) The increase will achieve the minimum rate of return needed to attract capital at reasonable costs and not to impair the credit of the public utility.

(4) The increase does not reflect labor costs in excess of those allowed by Price Commission policies.

(5) The increase takes into account expected and obtainable productivity gains, as determined under Price Commission policies.

(6) The procedures of the regulatory agency provide for reasonable opportunity for participation by all interested persons, or their representatives, in its proceedings.

3. In view of this decision, the question of what period of time constitutes the "maximum suspension period permitted by law" under § 300.16(i) (3) is not reached.